# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1805

_____

TCF National Bank,

      Plaintiff - Appellant,

      v.

Ben S. Bernanke; Janet L. Yellen;
Kevin M. Warsh; Elizabeth A. Duke;
Daniel K. Tarullo; Sarah Bloom
Raskin, the Board of Governors of
the Federal Reserve System, in their
official capacities; John Walsh,
Comptroller of the Currency, in his
official capacity,

      Defendants - Appellees.

_____

American Bankers Association;
Consumer Bankers Association;
Credit Union National Association;
Financial Services Roundtable;
Independent Community Bankers of
America; Mid-Size Bank Coalition of
America; State Bankers Associations;
National Association of Federal Credit
Unions; Economists and law and
economics scholars; The Clearing
House Association L.L.C.,

      Amici on behalf of Appellant,

Appeal from the United States
District Court for the
District of South Dakota.

Merchants Payment Coalition; Retail     *
Litigation Center; MDL-1720 Class     *
Plaintiffs,     *

    *

      Amici on Behalf of Appellee.     *

_____

Submitted: June 16, 2011
Filed: June 29, 2011

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

TCF National Bank sued to enjoin a portion of the Dodd-Frank Wall Street Reform Act of 2010 that will limit the rate some financial institutions may charge for processing debit-card transactions. At the outset of the proceedings, TCF moved for a preliminary injunction, and the district court[1] denied the motion. We affirm.

I.

On July 21, 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203, 124 Stat. 1376 (2010). Section 1075 of the Act, known as the Durbin Amendment, amended the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*, by adding several provisions regulating debit-card interchange fees. The new provisions authorize the Board of Governors of the Federal Reserve System ("Board") to set the "interchange transaction fee that an issuer [of debit cards] may receive or charge with respect to an electronic debit

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

transaction."  § 1693o-2(a)(1).  By statute, "[t]he amount of any interchange transaction fee that an issuer may receive or charge with respect to an electronic debit transaction shall be reasonable and proportional to the cost incurred by the issuer with respect to the transaction."  § 1693o-2(a)(2).

The new provisions also charged the Board with promulgating regulations "to establish standards for assessing whether the amount of any interchange transaction fee . . . is reasonable and proportional to the cost incurred by the issuer with respect to the transaction."  § 1693o-2(a)(3)(A).  In making this determination, the Board is to "consider the functional similarity between . . . electronic debit transactions[ ] and . . . checking transactions that are required within the Federal Reserve bank system to clear at par."  § 1693o-2(a)(4)(A).  The Board must further distinguish between "the incremental cost incurred by an issuer for the role of the issuer in the authorization, clearance, or settlement of a particular electronic debit transaction" and "other costs incurred by an issuer which are not specific to a particular electronic debit transaction." § 1693o-2(a)(4)(B).  The latter costs "shall not be considered" by the Board.  Id.  Importantly, issuers with "assets" less than ten billion dollars are exempt from these regulations.  § 1693o-2(a)(6).

TCF is a national banking association with assets in excess of ten billion dollars.  TCF issues debit cards along with its checking accounts and currently uses the Visa network to issue debit cards.  Pursuant to a contract between TCF and Visa, Visa has the right to set the interchange rate, which by the district court's calculation, has averaged approximately forty-eight cents per transaction.

Concerned about the impact of these new provisions, which may result in a reduction of fees to twelve cents or less per transaction under proposed regulations by the Board, TCF filed suit to enjoin the Durbin Amendment.  In its suit, TCF alleges that §§ 1693o-2(a)(2), (a)(4), and (a)(6) are facially unconstitutional because these provisions will require the Board to set an interchange rate below the cost of

providing debit-card services. TCF also alleges that these provisions arbitrarily exempt smaller issuers from the Board's rate regulations. This, according to TCF, violates TCF's due-process and equal-protection rights provided for in the Fifth Amendment.

At the outset of the proceedings, TCF moved for a preliminary injunction, and the district court denied the motion, concluding that TCF was unlikely to prevail on the merits. The district court reached this conclusion after finding that the challenged provisions of the Durbin Amendment were only subject to rational-basis review on both TCF's due-process and equal-protection claims and that the provisions passed this highly deferential standard of review. The district court further found that TCF did not have a sufficient property interest to raise a due-process challenge given that TCF's interest in future interchange fees was highly speculative because Visa retained the right to alter the fees at will and because the banking industry is highly regulated. TCF appeals, arguing that the district court abused its discretion in denying its motion for a preliminary injunction.

## II.

"We review the district court's grant of a preliminary injunction for abuse of discretion, giving deference to the discretion of the district court." Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n, 564 F.3d 900, 904 (8th Cir. 2009). An abuse of discretion may occur when the district court rests its decision on clearly erroneous factual findings or erroneous legal conclusions. Coyne's & Co. v. Enesco, LLC, 553 F.3d 1128, 1131 (8th Cir. 2009). In determining whether to issue a preliminary injunction against a duly enacted statute, the district court must consider: (1) whether the movant is "likely to prevail on the merits"; (2) the threat of irreparable harm to the movant; (3) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and (4) the public interest. Planned

Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

In this case, TCF is challenging the facial validity of the Durbin Amendment. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); see also Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449–50 (2008) (reaffirming the Salerno test outside the context of certain First Amendment challenges). This is because facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Wash. State Grange, 552 U.S. at 450 (internal quotation marks omitted). With these principles in mind, we turn to TCF's arguments.

A.

TCF argues that the district court abused its discretion in denying TCF's motion for a preliminary injunction because the district court relied on erroneous legal and factual findings when concluding that TCF is not likely to prevail on its due-process claim. TCF specifically asserts that the court should have subjected the challenged provisions to a more stringent confiscatory-rate analysis and not a rational-basis test because the Durbin Amendment effectively limits how much TCF may charge for its debit-card services. TCF maintains that, under a confiscatory-rate analysis, no set of circumstances exists in which the challenged provisions would be constitutional because § 1693o-2(a)(4)(B) requires the Board to set an interchange rate below the cost of providing debit-card services. TCF alleges that the rate must be below cost since § (a)(4)(B) prevents the Board from factoring in necessary overhead debit-card costs "not specific to a particular electronic debt transaction," such as providing a call

center for customer care. TCF further asserts that it possesses a sufficient property interest in its ongoing debit-card business and in its contractual relationship with Visa to enable it to challenge the Durbin Amendment on due-process grounds. We disagree.

The Fifth Amendment states in part that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Parties making substantive-due-process claims concerning economic regulations generally "face a highly deferential rational basis test," whereby "the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Koster v. City of Davenport, Iowa, 183 F.3d 762, 768 (8th Cir. 1999) (internal quotation marks omitted). Similarly, "[t]he standard for determining whether a state price-control regulation is constitutional under the Due Process Clause is well established: Price control is unconstitutional if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt." Pennell v. City of San Jose, 485 U.S. 1, 11 (1988) (alterations omitted) (internal quotation marks). Since "the Constitution protects rather than creates property interests," Phillips v. Wash. Legal Found., 524 U.S. 156, 164 (1998), "[t]he possession of a protected life, liberty, or property interest is a condition precedent to invoking the government's obligation to provide due process of law." Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis, 572 F.3d 502, 510 (8th Cir. 2009) (internal quotation marks omitted). Thus, possession of a protected property interest is also a condition precedent to either a rational-basis review or a Pennell-type confiscatory-rate analysis.

Here, even assuming that TCF possesses a sufficient property interest to raise a due-process challenge, we do not believe that TCF is likely to prevail. As an initial matter, we are not convinced that a confiscatory-rate analysis applies or that it would afford TCF relief. The Durbin Amendment only restricts how much certain financial institutions issuing a debit card may charge for processing a transaction; it does *not*

restrict how much those institutions may charge their customers for the privilege of using their debit-card services. Since TCF is free under the Durbin Amendment to assess fees on its customers to offset any losses under the Durbin Amendment, we are skeptical that the Durbin Amendment has even created a sufficient price control on TCF's debit-card business so as to trigger a confiscatory-rate analysis or that the law could, in fact, produce a confiscatory rate. Indeed, the heart of any confiscatory-rate claim is the ability to show that the government has set a maximum price for a good or service and that the rate is below the cost of production (factoring in a reasonable rate of return), which TCF has simply not shown on this record.[2] See In re Permian Basin Area Rate Cases, 390 U.S. 747, 768–69 (1968); see also Pennell, 485 U.S. at 11–12 (collecting cases).

TCF attempts to avoid this conclusion by arguing that market pressures will prevent it from assessing customer fees because smaller banks are exempt from the Durbin Amendment and will be able to avoid assessing customer fees. By TCF's own admission, however, Visa is currently bound to offer all financial institutions the same interchange rate, and as such, the record is not clear that smaller banks will have a competitive advantage.[3] More fundamentally, though, since the source of the

---

[2]The Board also asserts that we should not apply a confiscatory-rate analysis to TCF's due-process claim because the Supreme Court has implicitly limited confiscatory-rate jurisprudence to circumstances involving utilities or utility like entities, which TCF is not. The Board alternatively asserts that the confiscatory-rate analysis is essentially the same as the rational-basis test given the use of similar terms in both tests such that it is immaterial which test we employ. Given our conclusion, we find no need to comment on either argument.

[3]This is especially true in light of recent comments by Ben Bernanke, Chairman of the Board, before a Senate committee hearing. He testified in part:

By the statute, the smaller institutions will be exempt from these restrictions, but there is the possibility, as I mentioned, that either because merchants wouldn't accept the more expensive cards or because

alleged market pressure is an economic classification contained in the Durbin Amendment, TCF's argument would be on equal-protection grounds, as discussed below, and not on a due-process ground under the confiscatory-rate doctrine. This is because no legal prohibition exists against TCF fully recouping the costs of its debit-card services by assessing customer fees.

Setting aside the confiscatory-rate analysis, we conclude that the challenged provisions of the Durbin Amendment survive rational basis review for the reasons stated by the district court, namely that "Congress's decision to link interchange fees to issuing banks' actual costs bears a reasonable relationship to two proper legislative purposes: (1) to ensure that such fees are reasonable and (2) to prevent retailers and consumers from having to bear a disproportionate amount of costs of the debit card system." Accordingly, based upon the current state of the record (which may change in the future), we do not believe that TCF is likely to prevail on its due-process claim.

B.

TCF also argues that the district court abused its discretion in denying TCF's motion for a preliminary injunction because of a legal error in analyzing TCF's equal-protection claim. TCF concedes that the challenged provisions of the Durbin Amendment are subject only to a rational-basis review since the provisions do not involve any suspect classification. TCF argues, however, that the district court erred in applying the test because no legitimate governmental interest exists in favoring one class of banks from another in this context. This argument is meritless.

---

networks would not be willing to have a two-tiered pricing system, it's possible that in practice they would not be exempt from the -- from the lower interchange fee.

Dodd-Frank Implementation: Hearing Before the S. Comm. on Banking, Hous., & Urban Affairs, 112th Cong. (2011), available at 2011 WL 549651.

-8-

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). In this case, we agree with the district court's conclusion that the Durbin Amendment's distinction between larger and smaller issuers of debit-cards is rationally related to the government's legitimate interests in protecting smaller banks, which do not enjoy the competitive advantage of their larger counterparts and which provide valuable diversity in the financial industry, and in ensuring consumer access to debit cards. See generally Fitzgerald v. Racing Ass'n of Cent. Iowa, 539 U.S. 103, 109 (2003). Accordingly, given the current record, we do not believe that TCF is likely to prevail on its equal-protection argument and do not believe it is necessary to evaluate the remaining Dataphase factors. See Planned Parenthood, 530 F.3d at 732 ("If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other Dataphase factors.").

III.

For the foregoing reasons, we affirm the district court's denial of TCF's motion for a preliminary injunction.

_____