# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1768

_____

Evgueni Roudachevski, D.O.,     *
                              *

Appellant,     *
                              *

v.     *   Appeal from the United States
                              *   District Court for the
                              *   Eastern District of Arkansas.

All-American Care Centers, Inc.     *
d/b/a All-American Care     *
of Little Rock,     *
                              *

Appellee.     *

_____

Submitted: June 14, 2011
Filed: August 8, 2011

_____

Before BYE and MELLOY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

ERICKSEN, District Judge.

Evgueni Roudachevski, D.O. ("Dr. Roudachevski") sought a temporary restraining order and preliminary injunction after All-American Care Centers, Inc. terminated his patient privileges at a residential nursing care facility. The district

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

court[2] treated Dr. Roudachevski's motion as one for a preliminary injunction, held an evidentiary hearing, and denied the motion. We granted an expedited appeal, and we affirm.

## I.    Background

Dr. Roudachevski, a doctor of osteopathic medicine, began practicing at All-American Care Center of Little Rock ("All-American Care"), which then operated under the name Parkview Rehabilitation and Healthcare Center, in 2008. He stopped working with All-American Care in January 2010, when another physician replaced him as medical director. He was rehired to the same position in July 2010. On December 16, 2010, All-American Care provided Dr. Roudachevski with 30 days' notice of his termination. However, after a meeting with Jerry L. Rhoads, the president and CEO of All-American Care Centers, Dr. Roudachevski was not terminated. In early February 2011, he became All-American Care's director of geriatrics and infection control. Another individual replaced Dr. Roudachevski as All-American Care's medical director. Dr. Roudachevski also served on the All-American Care board of clinical advisors and continued to see patients.

On February 23, 2011, following a disagreement over procedures at All-American Care, Dr. Roudachevski resigned his board and director positions. In his letter of resignation, Dr. Roudachevski stated that he would continue to provide medical care for his current patients. On February 24, 2011, Dr. Roudachevski received a letter from Rhoads terminating his practice at All-American Care. The letter claimed that Dr. Roudachevski had failed to comply with All-American Care's internal policies and procedures. For example, the letter alleged that Dr.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Roudachevski had "not cleared all decisions on discharge of patients from our facility with nursing administration, including those going to the ER." This time the termination was effective immediately.

At the time of his termination, Dr. Roudachevski had 68 All-American Care residents under his care. According to testimony presented by All-American Care, it informed residents and their legal guardians that Dr. Roudachevski no longer practiced with it and that they could transfer to another facility if they wanted to continue seeing Dr. Roudachevski. At the preliminary injunction hearing, Dr. Roudachevski testified that he had "received contact from patients" and a copy of a letter from the guardian of a patient, addressed to All-American Care, requesting that Dr. Roudachevski be given permission to continue treating the patient. An administrator at All-American Care testified that after receiving this letter, she spoke with the guardian, who decided to transfer his sister's care to an All-American Care physician. Dr. Roudachevski has not been back to All-American Care since his termination. It is undisputed that all of Dr. Roudachevski's former patients chose to remain at All-American Care.

On March 1, 2011, Dr. Roudachevski commenced this action in Arkansas state court, alleging tortious interference with contract or business expectancy and violation of the Arkansas Deceptive Trade Practices Act (ADTPA). He alleged that termination of his practice at All-American Care caused irreparable harm to his physician-patient relationships and that such harm would continue unless enjoined. In the Verified Complaint, Dr. Roudachevski sought a temporary restraining order directing All-American Care to allow him access to his patients residing at All-American Care and to take all steps necessary "to restore the status quo as it existed between Dr. Roudachevski and his patients . . . as of February 23, 2011." The Verified Complaint also sought preliminary and permanent injunctive relief. On March 14, 2011, All-American Care removed the case to federal court.

-3-

On March 23, 2011, the district court held an evidentiary hearing and denied Dr. Roudachevski's motion for a preliminary injunction. On March 31, 2011, the district court issued a written order memorializing and expanding upon the denial. The district court found that Dr. Roudachevski had failed to show a threat of irreparable harm because he had demonstrated only potential threats to his patients and his reputation, and only the possibility of liability and disciplinary measures. The district court determined that the balance of the harms weighed against granting injunctive relief because an injunction would "require [All-American Care] to undo acts completed before Dr. Roudachevski filed suit. Even assuming that such an undertaking is possible, it would create a risk of further disruption of patient care and order at [All-American Care]." The district court also concluded that Dr. Roudachevski had not established a likelihood of success on the merits of either his tortious interference claim or his ADTPA claim. Recognizing the public interest in both the physician-patient relationship and All-American Care's ability to enforce its policies, the district court determined that it could not make a finding on the issue of public interest. Dr. Roudachevski appeals, arguing that the district court abused its discretion by denying his motion for a preliminary injunction.

Dr. Roudachevski argues that the abrupt termination of his privileges at All-American Care disrupted his physician-patient relationships and that the termination caused irreparable harm to his practice and his patients. He also asserts that potential liability for malpractice and professional disciplinary measures and possible reputational harms constitute a threat of irreparable harm. At the time of oral argument before this Court, Dr. Roudachevski had not been sued by any of his former patients at All-American Care. On appeal, Dr. Roudachevski produced evidence that the Arkansas State Medical Board is investigating his termination, but the record contains no evidence that the investigation relates to the nature of his departure from

-4-

All-American Care or its effect on his patients.[3] He also argues that he is likely to succeed on the merits of his tortious interference claim and that both the public interest and the balance of the harms weigh in his favor.[4]

All-American Care argues that Dr. Roudachevski has failed to demonstrate a likelihood of success on the merits and that he has shown only economic or speculative harms. All-American Care also contends that restoring Dr. Roudachevski's privileges at All-American Care would cause a disruption to patients that outweighs any harm to Dr. Roudachevski in the absence of an injunction. Finally, All-American Care argues that the public interest in a long-term care facility's ability to ensure quality of care and the facility's right to set standards for physicians who practice in it weigh against the issuance of an injunction in this case.

---

[3]After we scheduled oral argument, Dr. Roudachevski moved to enlarge the record on appeal to include a letter from the Arkansas State Medical Board. The letter, which seeks a response from Dr. Roudachevski explaining the circumstances of his termination, is dated March 29, 2011. We granted the motion.

[4]At oral argument, Dr. Roudachevski's counsel requested an order allowing Dr. Roudachevski access to All-American Care to speak with his former patients, to review their charts, and to speak with their current treating physicians for the purpose of ensuring that his legal and professional responsibilities have been met. Because the relief is not based on new developments, and because it was not requested of district court, we decline to consider it on appeal. *See Hartman v. Workman*, 476 F.3d 633, 635 (8th Cir. 2007) ("Ordinarily, we will not consider an argument raised for the first time on appeal."); *cf. Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 n.2 (8th Cir. 1998) (citing *Miller v. Benson*, 51 F.3d 166, 168 (8th Cir. 1995), and *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63-64 (8th Cir. 1993)).

This suit is before us by virtue of diversity jurisdiction. In a diversity suit, we are bound to apply substantive state law. *In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010). The parties agree that Arkansas law governs. The parties disagree on the proper application of a line of cases from the Supreme Court of Arkansas, *Baptist Health v. Murphy* (*Murphy II*), 226 S.W.3d 800 (Ark. 2006), and *Baptist Health v. Murphy* (*Murphy III*), 2010 Ark. 358, 2010 Ark. LEXIS 458 (Ark. Sept. 30, 2010). In the *Murphy* cases, doctors sought to enjoin implementation of an economic credentialing policy that would terminate their privileges at Baptist Health hospitals solely based on their ownership interests in competing hospitals. *Murphy III*, 2010 Ark. LEXIS 458, at *2-4. Because many of the plaintiffs' patients were covered by insurance or benefit plans that covered treatment only at Baptist Health facilities, the policy would force the doctors to choose between their ownership interests in the other hospitals and the disruption of their physician-patient relationships. *Murphy II*, 226 S.W.3d at 808. The circuit court granted the plaintiffs' request for a preliminary injunction and the Arkansas Supreme Court affirmed. *Murphy III*, 2010 Ark. LEXIS 458, at *6 (citing *Murphy II*, 226 S.W.3d at 813). Ultimately, the Arkansas Supreme Court upheld the entry of a permanent injunction and the circuit court's finding that Baptist Health's conduct constituted tortious interference. *Id.* at *45. Dr. Roudachevski asserts that principles recognized in the *Murphy* cases dictate a finding of a threat of irreparable harm in this case and a finding that he is likely to succeed on the merits of his tortious interference claim. All-American Care asserts that the *Murphy* cases are distinguishable from the instant case.

Similarly, the parties dispute the relevance to this case of Arkansas and federal regulations allowing patients to select their own physicians. *See* Ark. Code Ann. § 20-10-1204(a)(5)(A) (residents of long-term care facilities have "[t]he right to freedom of choice in selecting a personal physician"); 42 C.F.R. § 483.10(d)(1) (residents of long-term care facilities have a right to choose a personal attending

physician). Dr. Roudachevski argues that the district court failed to appropriately consider these regulations in its analysis of the public interest in this case and that the regulations, with the *Murphy* decisions, require a finding in his favor on the issue of the public interest. All-American Care does not dispute the importance of the public interest in the physician-patient relationship but argues that the district court adequately considered it in evaluating the public interest.

## II.    Discussion

When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *See Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). We review the denial of a preliminary injunction for abuse of discretion. *Id.* An abuse of discretion may occur when the district court rests its decision on clearly erroneous factual findings or erroneous legal conclusions. *TCF Nat'l Bank v. Bernanke*, No. 11-1805, 2011 WL 2555696, at *2 (8th Cir. June 29, 2011).

### A.    Success on the merits

Dr. Roudachevski argues that the district court committed clear errors of fact and errors of law in assessing the merits of his tortious interference claim. Success on the merits has been referred to as the most important of the four factors. *See, e.g., Kai v. Ross*, 336 F.3d 650, 653 (8th Cir. 2003) ("As is often the case, the District

-7-

Court considered the first factor, likelihood of success on the merits after completion of the case, to be the most important one."). But it is insufficient on its own. *See Watkins*, 346 F.3d at 844. Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm. "The likelihood that plaintiff ultimately will prevail is meaningless in isolation . . . [and] must be examined in the context of the relative injuries to the parties and the public." *Gen. Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 319 (8th Cir. 2009) (alteration in original) (quoting *Dataphase Sys.*, 640 F.2d at 113). It may well be that Dr. Roudachevski has a case for damages, but we need not dwell on his likelihood of success on the merits because he has not satisfied the threat of irreparable harm requirement, a necessity in proving the propriety of injunctive relief at this stage.

### B. Irreparable Harm

The district court determined that Dr. Roudachevski had demonstrated no more than the possibility of harm. To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996). Dr. Roudachevski first asserts that the district court erred by ignoring his testimony as evidence of irreparable harm. The district court's order reflects consideration of the issues mentioned in Dr. Roudachevski's testimony, and there is no basis from which to conclude that the district court ignored this evidence. Dr. Roudachevski next argues that the district court erred as a matter of law by failing to find, based on *Murphy II*, that interference with a physician-patient relationship, and the possible negative medical outcomes that may result, necessarily requires a finding of irreparable harm. To the extent that disruption to the physician-patient relationship itself may, in some circumstances not present here, cause irreparable harm, *see Murphy II*, 226 S.W.3d

at 813, a preliminary injunction at this stage could not undo the harm caused to either Dr. Roudachevski or his patients. The relationship between Dr. Roudachevski and his former patients has already been disrupted, and Dr. Roudachevski's former patients have developed new physician-patient relationships that would be disrupted by the reinstatement of Dr. Roudachevski.

Similarly, we are not persuaded that an injunction at this stage will remedy the potential harms of possible liability suits, charges of patient abandonment, and reputational damages cited by Dr. Roudachevski. We cannot conclude, as Dr. Roudachevski alleges, that the district court committed either legal or factual error on this point. As in *Murphy II*, Dr. Roudachevski's alleged potential damages to his professional reputation do not justify a finding of a threat of irreparable harm sufficient to support the issuance of a preliminary injunction. *See Murphy II*, 226 S.W.3d at 812-13. While damages to reputation can constitute a threat of irreparable harm, *see Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.* 336 F.3d 801, 805 (8th Cir. 2003), Dr. Roudachevski did not demonstrate such a threat. To demonstrate the threat of irreparable harm to his reputation, Dr. Roudachevski points first to his testimony describing the effect that the disruption of the physician-patient relationship has on patients' trust and their ability to receive continuity of care. This testimony relates to harm to patients, and thus perhaps the public interest, but not to Dr. Roudachevski himself. Neither does this testimony demonstrate a threat of irreparable harm to his reputation. He also points to the testimony of one patient's legal guardian that Rhoads informed her Dr. Roudachevski "was not a good doctor" and would not be at the facility. Dr. Roudachevski also presented evidence that the Arkansas State Medical Board has begun an investigation into his termination. The one sentence letter from the Arkansas State Medical Board contains no indication of the purpose of the investigation or any suggestion that it relates to liability for patient abandonment or other professional discipline. Dr. Roudachevski argues that All-American Care did not present evidence that his reputation was not damaged, but it

is Dr. Roudachevski who bears the burden of demonstrating a threat of irreparable harm. *See Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999). Given the evidence in the record and the stage of the litigation, we cannot conclude that the district court erred in finding that Dr. Roudachevski did not establish a threat of irreparable harm.

## C.     Balance of Harms

The district court found that any potential harm to Dr. Roudachevski resulting from the denial of the motion for a preliminary injunction is outweighed by the likely injury "to patient care and order" at All-American Care. Dr. Roudachevski argues that this was a clear error of fact and an error of law. In making this decision, the district court relied on the testimony of Catherine Adams, the director of nursing at All-American Care, that restoring Dr. Roudachevski's privileges would cause chaos. Dr. Roudachevski argues that the district court's reliance on Adams's statement was error because it was unsubstantiated. As the district court stated, an injunction restoring Dr. Roudachevski to the status quo as of February 23, 2011, would require All-American Care to undo acts completed before Dr. Roudachevski filed suit. This would create a risk of further disruption to the treatment of residents who have so recently made the transition to the care of new doctors. The abrupt end to care by Dr. Roudachevski has already occurred and it is not at all clear that the restoration of his privileges would be helpful in addressing whatever harms resulted from his termination. We cannot conclude that the district court erred in finding that the balance of the harms weighed against the issuance of an injunction.

## D. Public Interest

Dr. Roudachevski asserts that the district court clearly erred as a matter of fact and erred as a matter of law by finding that it was not possible to determine the public interest at this stage of the litigation. He argues that the district court failed to give appropriate weight to federal and state regulations that guarantee patients in long-term care facilities the right to choose a physician. *See* Ark. Code Ann. § 20-10-1204(a)(5)(A); 42 C.F.R. § 483.10(d)(1). He also asserts that *Murphy II*, 226 S.W.3d at 813, reflects Arkansas policy that "the patient-physician relationship is sacrosanct." This argument fails to acknowledge the public interest in the right and ability of a private long-term care facility to enforce internal policies and procedures. In addition, while doing so would have carried practical challenges, Dr. Roudachevski's patients were given an option to transfer to another facility and remain in his care. We find no error in the district court's conclusion that the public interest was not presently ascertainable.

The district court did not abuse its discretion in denying the motion for a preliminary injunction. The judgment of the district court is AFFIRMED.

_____