# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1098
_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellee*

v.

Jet Midwest Group, LLC; Paul Kraus; Karen Kraus

*Defendants*

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul
Ohadi Trust dated December 15, 1999 and in his individual capacity; F. Paul
Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley

*Defendants - Appellants*

Jet Midwest Inc.

*Defendant*

PMC Aviation 2012-1, LLC

*Cross Claimant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: February 13, 2020
Filed: March 25, 2020
_____

Before SMITH, Chief Judge, COLLOTON and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999, and in his individual capacity ("Ohadi"), and Kenneth M. Woolley appeal the district court's[1] order granting Jet Midwest International Co., Ltd ("Jet Midwest") and PMC Aviation 2012–1, LLC's ("PMC Aviation") motion for a preliminary injunction to prevent Ohadi and Woolley from foreclosing on the assets of Jet Midwest Group, LLC (JMG) until the parties conduct an expedited trial on the merits of the underlying fraudulent transfer action. We affirm.

## I. *Background*

JMG is in the business of purchasing and reselling aircraft and their parts. In 2015, JMG faced financial trouble, and in June 2015, Ohadi loaned JMG $11 million to help pay JMG's debts. In August, Ohadi and JMG executed security interests encumbering almost all of JMG's assets at the time to allegedly secure the June loan. In addition, in September 2015, Jet Midwest loaned JMG $6.5 million to purchase a Boeing 737 aircraft ("Aircraft") and created a purchase money security interest by securing the $6.5 million loan with the Aircraft.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

JMG later defaulted on its obligation to repay Jet Midwest, and on October 25, 2017, a district court granted judgment in favor of Jet Midwest against JMG for the principal and interest of the loan. Jet Midwest attempted to garnish bank accounts, tried to enforce a writ of execution, and conducted discovery to determine what happened to its Aircraft. However, JMG stated that it did not know where the Aircraft was and only paid $290.58 to Jet Midwest. Despite this, Jet Midwest alleged that JMG continued to make payments to Ohadi.

On February 16, 2018, Jet Midwest filed the underlying fraudulent transfer action, alleging that JMG, Ohadi, and Woolley violated the Missouri Uniform Fraudulent Transfer Act. After Jet Midwest filed the suit, JMG and Ohadi entered into a new security agreement that attempted to grant Ohadi a blanket lien over all of JMG's assets. JMG then filed for bankruptcy, and the underlying fraudulent transfer case was stayed pursuant to 11 U.S.C. § 362. On June 1, 2018, the bankruptcy court entered an order dismissing the bankruptcy case, and the district court then lifted the stay of the fraudulent transfer case. About a month later, PMC Aviation,[2] another creditor, intervened in the underlying fraudulent transfer action, specifically alleging that it discovered Side Letter Agreements between Ohadi, Woolley, and JMG that revealed a fraudulent scheme in which JMG funneled money to Ohadi and Woolley.

On November 29, 2018, Woolley and Ohadi issued Notices of Disposition of Collateral, stating that on December 19, the parties would auction off JMG's collateral to satisfy JMG's debts to them. The list of collateral included 83,500 miscellaneous parts, 4 engines, and 6 airplanes. Jet Midwest reviewed the list and learned that the list included many spare parts of its Aircraft even though JMG had previously stated that it did not know what happened to the Aircraft.

---

[2]PMC Aviation was originally an appellee in this appeal, but we granted PMC Aviation's motion to be removed as a party on September 9, 2019.

PMC Aviation then moved to enjoin Ohadi and Woolley from conducting the foreclosure sale because of their fraudulent actions and because PMC Aviation and Jet Midwest both likely had interests in the collateral to be sold at the foreclosure. The district court granted a temporary restraining order and set a hearing for January 3, 2019. All of the parties gathered evidence in support of their positions for the hearing, and Ohadi and Woolley alleged that they removed the Aircraft's parts from the foreclosure assets. At the hearing, the district court explained that it was inclined to grant the preliminary injunction because, given new facts in the case and obvious questions about priority of interest, it would be best to expedite a trial on the merits to correctly resolve the dispute on a more developed record. All parties agreed to expedite the trial, but Ohadi and Woolley argued that they needed a bond to protect themselves from potential loss as a result of the preliminary injunction. The district court then granted a preliminary injunction and stated it would work with the parties to expedite the trial. Soon after, the district court required Jet Midwest and PMC Aviation to post a $1 million bond. Ohadi and Woolley appeal.

## II. *Discussion*

"We review the district court's grant of a preliminary injunction for abuse of discretion, giving deference to the discretion of the district court." *PCTV Gold, Inc. v. SpeedNet, LLC.*, 508 F.3d 1137, 1142 (8th Cir. 2007). The district court is accorded deference because of its greater familiarity with the facts and the parties. We generally will not disturb the district court's decision if it "remains within the range of choice available to the district court, accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a clear error of judgment." *Id.*

When determining whether to issue a preliminary injunction, the district court should consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th

Cir. 1981) (en banc). Upon review of this record, we hold that the district court properly applied the *Dataphase* factors and, therefore, did not abuse its discretion.[3]

A. *Likelihood of Success on the Merits*

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). Therefore, we address this factor first. *See id.* When determining the likelihood of Jet Midwest's success on the merits, we do not have to decide whether Jet Midwest "will ultimately win." *PCTV Gold, Inc.*, 508 F.3d at 1143. "[A]n injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005). But, Jet Midwest does not need to "prove a greater than fifty per cent likelihood that [it] will prevail on the merits." *Dataphase Sys.*, 640 F.2d at 113. Instead, Jet Midwest must simply show a "fair chance of prevailing." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc).

In the underlying action, Jet Midwest alleges that JMG, Ohadi, and Woolley violated the Missouri Uniform Fraudulent Transfer Act because JMG funneled Ohadi and Woolley millions of dollars through fraudulent transfers in anticipation of and after entry of Jet Midwest's judgment against JMG. Relevant to the preliminary injunction, Jet Midwest seeks to resolve disputes between the parties about the assets remaining in JMG's possessions. And specifically, the district court granted the preliminary injunction to determine (1) whether Jet Midwest had a priority interest in some of the assets in the foreclosure sale and (2) whether some of the assets were not covered by Woolley or Ohadi's possible security interests.

---

[3]Ohadi and Woolley argue that the district court abused its discretion by not taking additional evidence and by not conducting an evidentiary hearing before granting the preliminary injunction. However, the district court did conduct a hearing, and all parties agreed that the best course of action would be to expedite the trial. Accordingly, we reject this argument.

Ohadi and Woolley contend that the district court erred by relying on PMC's evidence of Side Letter Agreements between JMG, Woolley, and Ohadi in issuing the preliminary injunction. They contend that the Side Letter Agreements were inducements for Woolley to lend funds to JMG and were not part of a fraudulent scheme to drain profits out of JMG. In addition, Ohadi and Woolley point to a security interest covering portions of the money that JMG transferred to Ohadi. In contrast, Jet Midwest focuses on different facts than Ohadi and Woolley and contends that any of Ohadi's liens are voidable under the Missouri Uniform Fraudulent Transfer Act because they were granted by a clearly insolvent debtor, JMG, to Ohadi, an insider.

Both of these arguments warrant a deep dive into the record developed at trial. However, we need not decide which interpretation of the fraudulent transfer action is the correct one. *See PCTV Gold, Inc.*, 508 F.3d at 1144. Instead, we "need only review the district court's assessment of [Jet Midwest's] likelihood to prevail on the merits." *Id.* Here, the complicated nature of the facts and the uncertainty present during the preliminary injunction stage demonstrate the reasonableness of the district court's grant of the preliminary injunction. Jet Midwest and PMC presented evidence that Ohadi was potentially an insider of JMG, that there was a suspicious gap between JMG's alleged default on its debt to Ohadi and the timing of the foreclosure sale, and that the Side Letter Agreements could possibly be fraudulent in nature.

Further, no dispute exists that the foreclosure sale initially contained parts from Jet Midwest's Aircraft and that Jet Midwest had a purchase money security interest in the Aircraft. *See* Mo. Rev. Stat. § 400.9-103(b); *see also First Nat'l Bank of Steeleville, N.A. v. Erb Equip. Co.*, 921 S.W.2d 57, 63 (Mo. Ct. App. 1996) ("Purchase money security interests are an exception to the usual 'first in priority rule,' and receive that status to encourage suppliers to furnish necessary commodities, equipment, machinery, etc. to businesses which may have borrowed from another source and have blanket security liens on all their property . . . ."). Because the

foreclosure sale potentially contained parts of the Aircraft that Jet Midwest had first priority over and because the complicated issues likely could not be resolved without a more developed record at trial, the district court did not abuse its discretion in determining that Jet Midwest demonstrated a likelihood of success on the merits. We intimate no view, however, on how the merits should be resolved after a full bench trial.

## B. *Irreparable Harm*

Ohadi and Woolley argue that Jet Midwest did not suffer irreparable harm because if Jet Midwest later prevailed, it could recover monetary damages. Ohadi and Woolley are correct that there is no threat of irreparable harm if the potential harm could be remedied by monetary damages. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987). However, as the district court correctly pointed out, damages would be hard to calculate after the foreclosure sale because it would be difficult, or even impossible, to figure out what parts were sold, who had a security interest in the sold parts, and how much each sold for at the foreclosure. *See Textron Fin. Corp. v. Childress*, No. 5:09-cv-00149-SWW, 2009 WL 10676813, at \*3 (E.D. Ark. May 29, 2009) (granting a TRO to stop defendants from disposing of collateral because the disposition would leave the plaintiff unsecured and the remaining collateral might be concealed or disposed of without remitting payment).

This is especially true here, where JMG misled Jet Midwest by saying that it did not know what had happened to Jet Midwest's security interest—its Aircraft—but later listed spare parts from the Aircraft on the asset list for the foreclosure sale. Similarly, other courts have also found irreparable harm where a debtor conceals assets from its creditor, especially in the case of a security interest. For example, the Sixth Circuit explained that a monetary judgment alone was not enough to protect the plaintiffs from irreparable harm because the defendant continued to avoid payment after the judgment against him and concealed assets to evade collection efforts. *McGirr v. Rehme*, 891 F.3d 603, 613–14 (6th Cir. 2018).

Neither Ohadi nor Woolley has proven that Jet Midwest lacks any interest in the assets listed for the foreclosure sale. Because it would be extremely difficult, if not impossible, to trace the various security interests in the sold parts after the sale, Jet Midwest would suffer irreparable harm if Ohadi and Woolley were allowed to proceed with the foreclosure sale.

## C. *Balance of the Harms*

In its order, the district court adequately explained that Ohadi and Woolley would only be slightly inconvenienced by having to postpone the sale. Ohadi and Woolley may incur some storage and maintenance costs. Also, the items to be sold may also slightly depreciate, but this harm is minimal given that Ohadi and Woolley already waited two years to foreclose. Ohadi and Woolley's burden is outweighed by the serious potential harm Jet Midwest would face if Ohadi and Woolley conducted a foreclosure sale of its possible interests.

## D. *Public Interest*

Finally, the district court did not abuse its discretion in finding that the public interest favored enforcing the injunction to prevent fraud. Public interest would favor settling allegations of fraud and competing security interests before allowing two alleged creditors to enforce a foreclosure objected to by two interested parties.

## III. *Conclusion*

Given the complicated nature of the underlying action and the competing security interests, the district court did not abuse its discretion in making the reasonable decision to grant the preliminary injunction to maintain the status quo and expedite the trial to further develop the record. Accordingly, we affirm.

_____